**SOUTHERN POULTRY PROCESSING, INC., et al., Appellants,**

v.

**DEWITT FARMS CORPORATION, et al., Appellees.**

No. 1549.

Court of Appeals of Texas, Tyler.

Aug. 12, 1982.

Rehearing Denied with Opinion Sept. 9, 1982.

---

Thomas L. Belanger, Adams & Belanger, Nacogdoches, for appellants.

Walter L. Borgfeld, Jr., Zeleskey, Cornelius, Rogers, Hallmark & Hicks, Lufkin, Robert W. Littrell, Texarkana, for appellees.

McKAY, Justice.

This suit arises out of a $158,819.85 balance in a floor reserve account. Following a jury trial, the court disregarded a jury finding and entered take-nothing judgments against plaintiffs and cross-plaintiff. We reverse the judgment and remand the cause.

The alignment of the parties at the time of trial was as follows:

A. *Plaintiffs*

1. Southern Poultry Processing, Inc., d/b/a City Poultry (Southern Poultry)

2. Southern Feed Company, Inc. (Southern Feed)

B. *Defendants*

1. DeWitt Corporation (DeWitt)

2. Lane Poultry Company (Lane Poultry)

3. Clift C. Lane (Lane)

C. *Cross-Plaintiff*—Dewitt

D. *Cross-Defendant*—Jim Dandy Fast Foods (Jim Dandy)

Plaintiffs, seeking the $158,819.85 floor reserve account balance, sued all defendants on a sworn account and, alternatively, for breach of contract. Defendants filed general and sworn denials, and affirmatively pleaded novation. Plaintiffs sued Lane Poultry and Lane under the Bulk Transfer Act, and cross-plaintiff DeWitt sued Jim Dandy for fraud.

Pertaining to the suit by Southern Poultry and Southern Feed against DeWitt, Lane Poultry and Lane, the record reveals that between 1973 and 1978 DeWitt and City Poultry Processing Company (City Poultry) had an agreement that DeWitt would sell broiler chickens to City Poultry, which at that time was owned by Jim Dandy. City Poultry also purchased broiler chickens from Southern Broilers. Beginning in 1974 all contracts between City Poultry and DeWitt Farms provided for a floor reserve account. The contract provisions concerning the floor reserve account were to the effect that when the contract price for chickens exceeded the Georgia live market price, an amount would be credited to the floor reserve account in favor of City Poultry; conversely, when the contract price for chickens was less than the Georgia live market price, the floor reserve account would be debited. Under the contract City Poultry could use any floor reserve account funds to offset amounts it owed DeWitt.

DeWitt sold its chicken producing assets and assigned its November 28, 1977, contract with City Poultry to Lane effective

May 1, 1978. On that date, the balance in the floor reserve account was $158,819.85. DeWitt insisted that Lane supply City Poultry with chickens, as DeWitt had done, by whatever deal Lane could make with City Poultry. DeWitt did not participate in the negotiations between Lane and City Poultry.

The jury found: (1) the sale of assets from DeWitt to Lane in May 1978 constituted a bulk transfer; (5) Lane d/b/a Texas Broilers or DeWitt terminated the November 28, 1977, contract between City Poultry and DeWitt without the consent of Southern Poultry d/b/a City Poultry; (6) the sum of money to compensate Jim Dandy for its loss caused by the termination of DeWitt's agreement with City Poultry dated November 28, 1977, while a balance existed in the floor reserve account, was $158,819.85; (7) attorney's fees for Southern Poultry in trial court $7,600, and (8) if appeal taken to Court of Appeals, $3,000, and (8a) to Supreme Court, $2,400; (9) Lane, d/b/a Texas Broilers, and Southern Poultry, d/b/a City Poultry entered into an oral agreement effective May 1, 1978, for the supply of poultry; and, (10) such agreement effected a novation of the prior agreement of November 28, 1977, between DeWitt and City Poultry.

The jury failed to find: (3) that DeWitt knew or should have known that after November 10, 1975, DeWitt was not receiving the same price for its chickens under its agreement with City Poultry that was being paid to Southern Broilers under its agreement with City Poultry; (4) that the representatives of Southern Poultry intended to discharge DeWitt from its obligations with regard to the floor reserve account when Southern Poultry started buying chickens from Lane; and, (12) that the representations of City Poultry that DeWitt was receiving the same price for chickens under its agreement with City Poultry that was being paid to Southern Broilers under its agreement with City Poultry constituted fraud.

The trial court disregarded the jury's answer to issue 4 and rendered a take-nothing judgment against plaintiffs in their suit against defendants. The trial court also decreed that cross-plaintiff DeWitt take nothing on its cross-action against Jim Dandy.

The posture of the parties on appeal is as follows:

A. *Appellants—Cross-Appellees*
  1. Southern Poultry
  2. Southern Feed
B. *Appellees*
  1. DeWitt
  2. Lane Poultry
  3. Lane
C. *Cross-Appellant—DeWitt*

We believe that the novation question is dispositive of this appeal. Simply put, appellant's position is that the $158,819.85 owed to them under the floor reserve account in the November 28, 1977 contract is still a valid debt because it was not extinguished by a novation. Appellants specifically assert that there was no evidence to warrant the submission of issue 10, wherein the jury found that Lane, dba Texas Broilers, and City Poultry by their agreement of May 1, 1978, effected a novation of the November 28, 1977 agreement between DeWitt and City Poultry. Appellants also maintain the trial court erred in submitting issue 10 and in failing to disregard the jury's answer thereto because DeWitt made a judicial admission fatal to its defense of novation. Further complaint is made that the trial court failed to grant City Poultry a new trial because the jury's answer to issue 10 was supported by insufficient evidence.

The witness Currie, who had been an employee of Southern Poultry, testified it was his understanding that Lane purchased the assets of DeWitt effective May 1, 1978, and that he stopped making entries and keeping up with the balance on the floor reserve account because there was a new owner of the assets. He said they then negotiated with Tom Greer, Lane's representative, about the supply of poultry, and "we agreed to a certain number of birds supplied under a contractual arrangement." He further testified he prepared a written

contract between Southern Poultry and Texas Broilers which was never signed, but Texas Broilers supplied chickens to City Poultry and City Poultry paid "pursuant to the terms set forth in that agreement."

Harold McDonald, President of Southern Feed, Vice President of Southern Poultry, and a partner in Southern Broilers, on June 29, 1978, sent a letter addressed to Tom Greer of Lane Poultry, requesting payment of a "loss reserve balance" from the monies owed by Lane Poultry to DeWitt. He further testified that when he contacted Lane's attorney, Mr. Hlavinka, he (McDonald) asked Hlavinka about the reserve balance payment. McDonald also stated that when he asked Greer whether he intended to perform under the DeWitt contract Greer informed him he was not interested and would not consider operating under the existing contract with DeWitt, and that he was not interested in paying or settling any portion of the reserve. McDonald said that Greer also agreed that the contract between City Poultry provided that if City Poultry terminated the contract with DeWitt it would wipe out the floor reserve.

The question posed is whether the above evidence is sufficient to submit and support the finding in special issue 10 on novation. We believe the definition of novation, as set out by Texas courts, furnishes the answer. The opinion in *Money v. Dameron*, 70 S.W.2d 291, 293 (Tex.Civ.App.—Amarillo 1934, writ ref'd) (on motion for rehearing), reads as follows:

In every novation there are four essential prerequisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one. It constitutes a new contractual relation and is based upon a new contract by all parties interested.

. . . . .

In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed.

In order to constitute a novation such as will release the obligation of the original debtor to his creditor it is necessary that there should be a new and valid contract which, as agreed between the parties, extinguishes the assumed existing contract or obligation. Hence *it must appear that the creditor unconditionally released the original debtor and accepted the third person in his stead; and where the parties count on the old contract as subsisting it certainly has not been novated.* The discharge of the old debt must be contemporaneous with and result from the consummation of an arrangement with the new debtor. (Emphasis added.)

The supreme court said in *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 424 (1953):

[A] second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first. . . . In keeping with this general rule it is held that to effect a novation by the substitution of one debtor for another thereby releasing the first, there must be agreement to that effect between all three parties, and a presumption of an intention to release the first debtor will not arise from the mere taking of the second.

It is said in *Frost v. First State Bank & Trust Co.*, 276 S.W. 222, 225 (Tex.Comm'n App.1925, jdgmt. adopted), "If an agreement does not, and is not intended by each and all the parties having an interest in the subject matter to, operate as a release of an original debt, it is not a novation." *Hardison v. Beard*, 430 S.W.2d 53, 56 (Tex.Civ. App.—Dallas 1968, writ ref'd n.r.e.) adds that "It is not necessary for the new contract to provide expressly for the extinguishment of the old obligation. The intent to extinguish the old contract may be inferred from the facts, circumstances and conduct of the parties when the new contract is executed." *Ridgleawood, Inc. v.*

*White,* 380 S.W.2d 766, 768 (Tex.Civ.App.— Waco 1964, no writ) points out that in that case it was not essential that the novation be in writing or express words. *See* 14 Tex.Jur.3d *Contracts* § 250 *et seq* (1981).

It appears that McDonald endeavored to persuade DeWitt to pay the floor reserve account. Failing to accomplish that, McDonald unsuccessfully attempted to get Greer (acting for Lane) to pay the account; however, an agreement was reached with Greer to furnish chickens to City Poultry without settling the floor reserve account dispute. Sometime later Southern Poultry, d/b/a City Poultry decided to sue DeWitt on the account. DeWitt was not a party to the agreement between City Poultry and Lane, and in our view it cannot be inferred from all the facts and circumstances that the claim against DeWitt was or was considered to be extinguished by the agreement of McDonald for Southern Poultry and Greer for Lane. DeWitt apparently did not consider it extinguished because he testified that no officer of City Poultry ever gave "any indication by word or act or any other way that they intended to release and forget the floor reserve account," and that they made continual efforts to collect the account.

■ We conclude that the evidence is insufficient to support the answer of the jury to issue 10 that there was a novation.

In view of our disposition of this point of error we see no necessity to address the other points. The trial court may correct its action on another trial if circumstances require it.

The judgment of the trial court is reversed and the cause is remanded.

## ON MOTION FOR REHEARING

All parties to this appeal have filed motions for rehearing. We overrule the motions of DeWitt, Lane Poultry, and Lane.

■ In the motion for rehearing of Southern Poultry, Southern Feed, and Jim Dandy, it has been pointed out that we failed to rule on the no evidence points asserted by appellants in connection with the novation issue. After a careful consideration of the record, considering only the evidence and the inferences in support of the finding of a novation and rejecting all evidence and inferences to the contrary, we find that there is more than a scintilla to support the finding. We therefore overrule appellants' no evidence point.

Upon a consideration of the entire record, however, we conclude, as in our original opinion, that the evidence is insufficient to support the answer of the jury to issue 10 that there was a novation, and we therefore sustain appellants' insufficient evidence point.

■ Appellants (Southern Poultry and Southern Feed) and cross-appellee (Jim Dandy) pray that the portion of the trial court's judgment ordering that DeWitt take nothing in its cross-action against Jim Dandy be affirmed. These contentions were not brought forward by DeWitt on appeal. Therefore, we did not address ourselves to that issue in our original opinion. We hereby affirm the judgment of the trial court that cross-plaintiff DeWitt take nothing in its cross-action against Jim Dandy.

This leaves undisturbed our original holding that the judgment of the trial court in the main action that plaintiff take nothing is reversed and the cause is remanded.